IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES ex rel. ) | |
| THOMAS M. UBL, ) | |
|     Relator, ) | |
| ) | |
|     v. ) | Civil Action No.  1:06cv641 |
| ) | |
| IIF DATA SOLUTIONS, and ) | |
| CHARLES PATTEN, SR., ) | |
|     Defendants. ) | |

## ORDER

Thomas Ubl initiated this *qui tam* action on June 2, 2006, by filing a complaint, under seal, alleging that his former employer, IIF Data Solutions ("IIF"), and its vice president, Charles Patten, Sr., had engaged in fraud and submitted false claims to the government in connection with several contracts with the General Services Administration ("GSA"), in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*.  After the government declined to intervene, the complaint was unsealed and served on the defendants, who then promptly moved to dismiss on the ground that the complaint did not meet the pleading requirements of Rule 9(b), Fed. R. Civ. P, which provides, in pertinent part, that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Defendants' motion to dismiss in this regard was granted, but Ubl was nonetheless granted leave to file an amended complaint stating with more particularly the allegations of fraud against defendants.  *See United States of America ex rel. Thomas M. Ubl v. IIF Data Solutions, et al.*, 1:06cv641 (E.D. Va. Mar. 30, 2007) (Order).  Ubl thereafter filed an amended complaint on April 13, 2007.  Now before the Court is defendants' motion to dismiss the amended complaint

1

pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid in the decisional process.

## I.

As alleged in the amended complaint, IIF is a small business headquartered in Falls Church, Virginia, that appears to derive most, if not all, of its revenue from GSA Multiple Award Schedule (MAS) contracts. Ubl worked as IIF's Director of Contracts from July 2001 until his resignation in 2006. When Ubl arrived in 2001, IIF had already entered into GSA Schedule contracts for certain items and Ubl was tasked with maintaining the contracts already in existence and with obtaining additional GSA contracts, as well.

The Federal Acquisitions Regulations ("FAR") prescribe the procedures under which GSA enters into contracts. Pursuant to FAR Rule 15.402, in particular, a contractor is typically required to submit "cost or pricing data" to enable the government to determine the reasonableness of the contractor's offered price. *See* FAR 15.402(a)(3). There are, however, several exceptions to this requirement, including what Ubl refers to as the "commerciality exception," according to which a contractor need not submit cost or pricing data if the contract is for "commercial items." FAR 15.403-1(b)(3). In this regard, the FAR's definition of "commercial item" includes, *inter alia*,

> any item, other than real property, that is of a type customarily used by the general public or by non-governmental entities for purposes other than government purposes, and . . . has been sold, leased, or licensed to the general public . . . [and] services of a type offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices . . ..

FAR 2.101.

Ubl claims that IIF did not qualify for the "commerciality exception" to the cost or pricing data requirement because it did not sell its goods and services to the general public. Yet, Ubl alleges that IIF, at Patten's direction, falsely certified to the government with respect to three separate contracts that it had previously sold its goods and services to the general public. Specifically, on August 23, 2000, November 13, 2001, and July 4, 2002, IIF submitted applications to GSA offices in Arlington, Virginia and Auburn, Washington for an Information Technology Schedule Contract, an Environmental Advisory Services Schedule Contract, and a Mission Oriented Business Integrated Services Schedule Contract, respectively. On each of these applications, IIF certified that it had a history of sales to the general public and that the prices at which it was offering its services to GSA were based on established catalog prices. Ubl alleges that IIF attached to these three applications commercial pricing schedules purporting to show prices at which the company had sold its goods and services to the general public in the past. The certifications and supporting documents, Ubl contends, were entirely false, and the resulting prices in the contracts ultimately awarded to IIF were substantially higher than they would have been had IIF submitted the "cost or pricing data" typically required of GSA contractors. Ubl thus contends that all three contracts were induced by fraud and that all of the claims IIF submitted to the government under the contracts were therefore false.

In addition to this first claim regarding the alleged fraudulent formation or inducement of the government contracts, Ubl further claims that defendants overbilled the government on certain specific occasions for services performed pursuant to the three fraudulently-obtained contracts. In this regard, many of the services performed by IIF were billed on an hourly basis at the hourly rate prescribed in the contracts. This required IIF to keep track of hours on time sheets, which IIF later submitted to GSA as invoices, or claims for payment. In the amended complaint, Ubl alleges that

Patten directed an IIF Administrative Assistant, Kim Trimble, to inflate the number of hours spent performing certain services under the contracts and to bill the government for time that was actually spent on non-government business, such as a trip Patten took to Pennsylvania to purchase automobiles at an auction, as well as babysitting services performed by Trimble. Ubl identifies the specific invoices that allegedly contain these false hours — Nos. 89, 94, 96, and 99 — and notes that the invoices were submitted to the government at the National Guard Bureau in Arlington on April 4, May 3, June 5, and July 3, 2002, respectively.

Finally, Ubl claims that Patten directed him on several occasions to charge 75 percent of his (Ubl's) hours to task orders issued under the Information Technology Schedule Contract, despite the fact that Ubl was not supposed to be a "direct charge" on those task orders. And, when Ubl refused to comply with Patten's directive in this regard, Patten allegedly instructed Trimble to disregard the time records submitted to her by Ubl, and instead to submit inflated invoices to the government reflecting Ubl's hours. Again, Ubl identifies in the amended complaint the specific invoices containing these alleged inflated and improper hours and notes the dates on which the false invoices were submitted to the government at the National Guard Bureau in Arlington.

## II.

It is well-settled that a complaint alleging fraud must meet the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P, which provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Specifically, the complaint must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999). This heightened pleading standard serves

four primary purposes, namely (i) it ensures that a defendant has sufficient information to formulate a defense by putting him or her on notice of the conduct complained of, (ii) it protects defendants from frivolous suits, (iii) it eliminates fraud actions in which all of the facts are learned after discovery, and (iv) it protects defendants from harm to their reputation. *Id.* The Fourth Circuit has made clear that "[a] court should be hesitant to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that the plaintiff has substantial prediscovery evidence of those facts." *Id*.

These principles, applied here, compel the conclusion that defendants' motion to dismiss must be denied because Ubl's amended complaint states with sufficient particularity the circumstances surrounding the instances of alleged fraud. Indeed, with respect to Ubl's first claim — namely, the claim in which Ubl alleges that IIF and Patten made false statements about IIF's commercial history to secure higher prices under three GSA contracts — the amended complaint includes specific allegations, as required, as to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison,* 176 F.3d at 784. The same is true with respect to Ubl's specific claims of overbilling and improper billing under the alleged fraudulently induced contracts. Moreover, with respect to both types of alleged fraud, the amended complaint is sufficient to make defendants "aware of the particular circumstances for which [they] will have to prepare a defense at trial." *Id*.

Yet, this does not end the analysis, for when applying Rule 9(b) to allegations under the False Claims Act, in particular, a court must also consider whether the allegations – even if they are stated with particularity – state cognizable claims under the False Claims Act. *See United States of*

5

*America ex rel. Karvelas v. Melrose-Wakefiled Hosp.*, 360 F.3d 220, 232 (1st Cir. 2004).  That is, even if a plaintiff states with particularity the circumstances constituting the alleged fraud, as Ubl has done here, that alleged fraud must still be of the type for which the False Claims Act provides a remedy.  In this regard, the Fourth Circuit has emphasized that "[t]he False Claims Act was not designed to punish every type of fraud committed upon the government." *Harrison*, 176 F.3d at 785 (citing *United States v. McNinch*, 356 U.S. 595, 599 (1958)).  Rather, "[i]n order for a false statement to be actionable under the False Claims Act it must constitute a 'false or fraudulent claim.'  The statute attaches liability not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim* for payment." *Harrison*, 176 F.3d at 785 (emphasis added). Distilled from the statute, therefore, the test for False Claims Act liability is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter;[1]

---

[1]  The False Claims Act allows a private litigant to sue, *inter alia*,

> [a]ny person who--
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]
>
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . ..

31 U.S.C. § 3729(a).

(3) that was material;[2] and (4) that caused the government to pay out funds or forfeit amounts due, i.e. that involved a "claim." *Id.*

With respect to Ubl's claim concerning the three alleged fraudulently induced GSA contracts, a review of the amended complaint makes clear that Ubl has adequately stated a claim under the False Claims Act in that he alleges (i) a false statement (IIF's misrepresentation about its commercial history), (ii) knowingly made by Patten, (iii) that was "material" in that it was capable of influencing GSA action by causing the agency to enter into contracts at higher prices that it would otherwise have paid, and (iv) that involved a false claim to the government. It is equally clear that Ubl adequately states a claim cognizable under the False Claims Act with respect to the specific instances of overbilling and inflated invoices submitted at Patten's direction. Moreover, the Fourth Circuit has recognized that in so-called "fraud-in-the-inducement" cases, where a defendant obtains a government contract by fraud, as adequately alleged here, all claims subsequently submitted pursuant to that contract are sufficient to constitute "false claims" within the meaning of the False Claims Act. *See id.*; *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943) (finding contractors liable under the False Claims Act for claims submitted under a contract obtained via collusive bidding). In the circumstances, therefore, defendants' motion to dismiss the amended complaint must be denied.

Accordingly, for the foregoing reasons,

It is hereby **ORDERED** that defendants' motion to dismiss the amended complaint pursuant

---

[2] A false statement is material if it "has a natural tendency to influence agency action or is capable of influencing agency action." *United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1459 (4th Cir. 1997).

to Rules 9(b) and 12(b)(6), Fed. R. Civ. P. is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

_____/s/_____

Alexandria, VA                                                  T. S. Ellis, III
August 1, 2007                                                 United States District Judge