IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES *ex rel.* | ) |
| THOMAS M. UBL, | ) |
| | ) |
| Relator, | ) |
| | ) |
| v. | ) Civil Action No.: 1:06-cv-641 |
| | ) |
| IIF DATA SOLUTIONS *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Leave to File Motion to

Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 282). In this motion Defendants

contend that this Court lacks subject matter jurisdiction over this action because Relator Ubl did

not file his amended complaint under seal and submit it to the government *in camera*. In

essence, Defendants argue that the filing and service requirements set forth in Section 3730(b)(2)

of the False Claims Act apply to amended complaints, and that a relator's failure to comply with

these requirements divests the court of subject matter jurisdiction. *See* 31 U.S.C. § 3730(b)(2).

For the reasons stated below, the Court concludes that Congress did not intend these

requirements to circumscribe a court's subject matter jurisdiction, and therefore denies

Defendants' motion as futile.

**I.     Background.**

On January 2, 2006, Relator Thomas Ubl filed a *qui tam* complaint against IIF Data

Solutions and Charles Patton ("Defendants"). The complaint alleged two theories of fraudulent

conduct related to IIF's Federal Supply Schedule contracts with the United States Government Services Administration.  In compliance with Section 3730(d)(2) of the False Claims Act, he filed his complaint in camera and under seal, and served his complaint and factual disclosure on the government.  On July 31, 2006, the government sought and obtained a 60 day extension of the intervention deadline.  The Court ordered that the government would have until October 3, 2006 to intervene in the action or notify the Court that it declined to do so.  After obtaining another extension, the government filed its notice of election to decline intervention on November 20, 2006.

On November 27, 2006, the Court ordered the complaint unsealed and served on the Defendants by the Relator, and that the seal be lifted as to all other matters occurring in the action.  This order was signed on November 27, 2006, and entered November 30, 2006.  On November 27, 2006, the case was unsealed.

Defendants were served on January 4, 2007, and filed a motion to dismiss on February 27, 2007, arguing that the fraud allegations in this complaint did not contain the level of particularity required by Fed. R. Civ. P. 9(b).  On March 30, 2007, the Court granted Defendants' motion and dismissed the complaint without prejudice.  The Court granted Relator Ubl leave to amend his complaint and set a briefing schedule for Defendants' motion to dismiss the amended complaint.

The Relator filed his amended complaint on April 13, 2007, as ordered.  He did not file the amended complaint in camera and under seal.  Defendants filed a motion to dismiss the amended complaint on April 20, 2007.  On August 1, 2007, the Court denied Defendants' motion to dismiss the amended complaint.

The case continued in active litigation for nearly a year. On May 6, 2008, Relator Ubl and Defendants reached a settlement in principle, which was memorialized in a "settlement agreement." This settlement agreement provided that it was "void without Government approval." The government objected to several aspects of this settlement in principle, including the percentage of the award Mr. Ubl claimed entitlement to, and withheld its consent to the settlement. Unable to reach agreement with the government, Relator Ubl filed a series of motions from October to December, 2008, seeking the Court's determination as to the settlement issues. Specifically, these motions were a Motion for Determination of Relator's Share of Proceeds, a Motion for Determination of Relator's Reasonable Attorney's Fees, a Motion for Determination of Priority of his Attorney's Fees, and a Motion to Overrule the United States' Objection to the Defendant's Release Payment and Settlement. The Court held a consolidated hearing on these motions on December 12, 2008. On December 18, 2008, the Court issued an order denying each of these motions. The Court found that it lacked authority to enforce a settlement agreement in a *qui tam* case without the government's consent. The Court ordered the parties to return to settlement discussions.

On April 17, 2009, Defendants filed the present motion for leave to file a motion to dismiss for lack of subject matter jurisdiction. The actual motion to dismiss and memorandum were attached as an exhibit to the motion for leave. This matter has been fully briefed and is now ripe for disposition.

**II.      Discussion.**

**A.       The filing and service requirements in Section 3730(b)(2) are not jurisdictional.**

Section 3730(b)(2) of the False Claims Act imposes mandatory filing and service requirements on *qui tam* relators. Specifically, the statute provides that "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint . . . *shall* be filed in camera, *shall* remain under seal for at least 60 days, and *shall* not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2) (emphases added). The first issue presented by this motion is whether Congress's use of the word "shall" in describing these requirements renders them jurisdictional in nature, meaning that a relator's failure to comply requires dismissal for lack of subject matter jurisdiction.

In *United States ex rel. David B. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339 (4th Cir. 1994), the Fourth Circuit considered whether the government's failure to comply with the requirements set forth by Section 3730(b)(4) of the False Claims Act jurisdictionally barred the government from proceeding with the case. *See* 31 U.S.C. § 3730(b)(4). Despite statutory language that the government "shall," within 60 days, proceed with the action or notify the court that it declines to take over the action, the court reasoned that Section 3730(b)(4) enacted a "non-jurisdictional statutory deadline." *Id.* at 1342. *Siller* instructs that courts must not assume that appearance of the word "shall" in a statutory provision renders that provision jurisdictional, but instead must examine "the normal indicia of congressional intent to determine whether Congress

-4-

meant the provision to be jurisdictional." *Id.* at 1344 (internal citation and quotation marks omitted).[1]

In accord, this Court must examine the "normal indicia of congressional intent" as to whether Congress intended Section 3730(b)(2)'s requirements as limitations on the court's subject matter jurisdiction. *Siller*, 21 F.3d at 1344; *see also United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 n.4 (2d Cir. 1995) (whether relator's failure to comply with procedural requirements of Section 3730(b)(2) deprives a court of subject matter jurisdiction "turns on the terms of the authority granted to federal courts by Congress in the empowering statute"). This inquiry is not to be taken lightly. Subject matter jurisdiction is the bedrock of a federal court's power to adjudicate controversies. *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived"). Accordingly, "[i]f the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (emphasis added). But "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." *Id.* at 515-516.

As *Siller* instructs, the mere appearance of "shall" before a procedural requirement does not, in and of itself, render the provision jurisdictional in character. The Court must look to other indicia of intent. Congress specified limitations on a court's jurisdiction over a False Claims Act

---

[1] Finding no such intent, *Siller* reversed the district court's dismissal of the government's complaint. *Id.* at 1346-37.

case elsewhere in the statute. *See* 31 U.S.C. § 3730(e)(1)-(e)(4). In Section 3730(e), for example, Congress provided that "[n]o court shall have jurisdiction over an action" brought by a member of the armed forces or a member of Congress. *Id.* This clear language – "[n]o court shall have jurisdiction over an action" – is conspicuously absent from Section 3730(b)(2). Congress could have used this language, or something similar, and removed jurisdiction where the relator failed to comply with the filing and service requirements. It did not. That Congress used precise language for jurisdictional limitations elsewhere in the same statute is strong evidence that Congress did not intend to limit a court's jurisdiction in Section 3730(b)(2). *Arbaugh*, 546 U.S. at 516.

Nor does the legislative history of the False Claims Act support reading Section 3730(b)(2)'s requirements as jurisdictional. *See United States ex rel. Milan v. Regents of the University of California*, 912 F. Supp. 868, 890 (D. Md. 1995) ("there is no suggestion in the legislative history that the provision was intended to benefit the defendant in any way, except to inform the defendant whether its opponent is the relator or the federal government"). The Senate Report for the False Claims Amendments Act of 1986 explains that the file-under-seal provision was added to reduce the risk that a qui tam complaint would tip off targets of ongoing criminal investigations. *See* Pub. L. No. 99-562, at \*16, False Claims Amendments Act of 1986, S. Rep. No. 99-345 (1986). The Report explains the changes to subsection (b)(2) in detail, and explains that "sealing the initial private civil false claims complaint protects both the Government and the defendant's interests without harming those of the private relator." *Id.* at \*24. But the Report says nothing at all about the consequences of a relator's failure to comply with the file-under-seal

-6-

provision, nor does it suggest that such a failure would strip the court's subject matter jurisdiction over the case. *Id.* at *23-24.

Moreover, if the service and filing requirements circumscribed courts' jurisdiction, it potentially could frustrate the overarching purpose of the False Claims Act, which is to prevent fraud perpetrated by private parties against the government. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("Congress intended that the False Claims Act . . . and its qui tam action would help the government uncover fraud and abuse"). A relator brings a *qui tam* suit on behalf of the government and, whether the government intervenes or not, it remains the real party-in-interest throughout the litigation. *See* 31 U.S.C. § 3730(b); *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 772-773 (2000). If the filing and service requirements were jurisdictional prerequisites, the proper remedy for a relator's failure to comply with them – in all cases – would be dismissal of the complaint with prejudice. *Arbaugh*, 546 U.S. at 514 ("when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"). Even in cases where the government might have elected to proceed with the action despite the relator's missteps, the court would be required to dismiss the complaint, in entirety, with prejudice. *Id.* Thus, a relator's procedural mistake would deprive the government – the real party-in-interest – of the opportunity to pursue the litigation. Given the finality of dismissal where a court lacks subject matter jurisdiction, it seems that had Congress wished to make a court's jurisdiction contingent upon a

relator's compliance with these procedural requirements, it would have done so explicitly.[2] *Id.* at 515-516.

The Court's March 17, 2007 Scheduling Order required the parties to obtain leave of court before filing an additional Rule 12 motion.  Having concluded that Section 3730(b)(2)'s filing and service requirements are not jurisdictional prerequisites, the Court holds that granting leave to file an additional motion to dismiss the amended complaint for lack of subject matter jurisdiction would be futile.[3]

**B.** **Under the circumstances of this case, the filing and service requirements did not apply to Relator Ubl's amended complaint.**

---

[2] In many cases, of course, the proper remedy for a relator's failure to comply with 3730(b)(2)'s procedural requirements might be dismissal of the action for failure to state a claim. *See Erickson ex rel. United States v. Amer. Inst. of Biological Sciences*, 716 F. Supp. 908, 912 (E.D. Va. 1989).  Notably, *Erickson* did not hold that Section 3730(b)(2) circumscribed the court's subject matter jurisdiction, but merely that "where . . . no cure exists, dismissal is the proper remedy." *Id.*

[3] This holding does not prejudice Defendants.  On November 27, 2006, the Court ordered the original complaint unsealed and served on Defendants, and further ordered that "the seal be lifted as to all other matters occurring in this action after the date of this order." *See* Dkt. No. 9. From that date forward, Defendants were on notice that the case was no longer under seal.  They have not since requested that any matter be filed under seal.  Nor did they argue that Relator Ubl was jurisdictionally barred in their motion to dismiss the amended complaint filed on April 20, 2007.  Defendants claim that the facts upon which this motion rests were not made known to them until October 2008.  Given that the Court unsealed all matters in this case in November 2006, and the case proceeded in open litigation for almost two years prior to October 2008, this strikes the Court as unlikely.  At a minimum, Defendants knew that the amended complaint had not been filed under seal, and readily could have inferred that it was not presented to the government *in camera*, or at least could have inquired at that time.

Defendants' motion must be denied for the additional reason that the filing and service requirements of Section 3730(b)(2) did not apply to Relator Ubl's amended complaint under these circumstances.

In general, where the court already has unsealed the case and granted the relator leave to amend the complaint, the policy arguments supporting dismissal for failure to comply with the filing and service requirements no longer hold. *See Erickson*, 716 F. Supp. at 912 (citing S. Rep. No. 345, 99th Cong., 2d Sess. 24, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5266, 5289). As *Erickson* explained, the filing and service requirements in Section 3730(b)(2) were adopted "primarily to allow the government first to ascertain in private whether it was already investigating the claims stated in the suit and then to consider whether it wished to intervene." *Id.* "The provisions were also designed to prevent alleged wrongdoers from being tipped off that they were under investigation." *Id. Erickson* logically reasoned that failure to file an *original* complaint in camera and under seal irrevocably defeated these purposes, and that no cure existed save dismissal of the action. *Id.*

Unlike *Erickson*, in this case the government already had the opportunity to review the complaint and factual disclosure statement. Indeed, the government reviewed the materials for almost six months before declining to intervene. As noted above, the Court unsealed the original complaint and "all other matters occurring in this action" on November 27, 2006, after which time the Defendants filed and prevailed on a motion to dismiss the original complaint. Obviously, there was no risk that filing the amended complaint would tip off Defendants as to the existence of an investigation given that they had been actively litigating the case for some time. *Erickson*, 716 F. Supp. at 912.

Nor did the amended complaint add new substantive claims requiring further consideration by the government. The amended complaint merely added specificity to the allegations contained in the original complaint. It did not assert additional claims for relief or plead drastically different allegations. In fact, Defendants themselves belabored the similarities between the original and amended complaints in their motion to dismiss. For example, they highlighted that "plaintiff's Amended Complaint borrows much from his first Complaint and adds little substance to either of his two claims."[4]

Defendants primarily rely upon two cases where this Court dismissed *qui tam* complaints for failure to comply with the procedural requirements of Section 3730(b)(2). In both cases, however, the relator failed to file and serve upon the government the *original* complaint under seal. *See Erickson*, 716 F. Supp. at 911-912; *United States ex rel. Anderson v. ITT Indus. Corp.*, 2006 WL 4117030, at *2 (E.D. Va. 2006) ("Plaintiff forwarded copies of his Complaint to [defendant] ITT on the same day it was filed . . ."). With respect to amended complaints filed after the action was unsealed, other courts have concluded that "[n]either the statute nor any relevant case law impose[s] the duty to file any amendments to that complaint in camera and under seal." *United States ex rel. Milan v. Regents of the University of California*, 912 F. Supp. 868, 890 (D. Md. 1995); *United States ex rel. Wisz v. C/HCA Development, Inc.*, 31 F. Supp. 2d

---

[4] The Court recognizes that under different circumstances an amended complaint might add new substantive claims for relief, or new and substantially different (as opposed to merely more detailed) allegations of fraud from those in the original complaint. In such a case, the policy considerations behind Section 3730(b)(2) might warrant ordering the *qui tam* relator to file the amended complaint under seal and serve it on the government. Courts should remain free to order compliance with these requirements when appropriate, and nothing in this opinion is intended to tie a court's hands in making such a determination.

1068 (N.D. Ill. 1998).  Under the circumstances presented here, the Court finds these latter cases persuasive.

**III.    Conclusion.**

Accordingly, for the reasons stated above, the Court denies Defendants' motion.  An appropriate order shall issue forthwith.

ENTERED this 5th day of May, 2009.

Alexandria, Virginia

                                                        /s/
                                          _____
                                          Liam O'Grady
                                          United States District Judge

-11-