

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES *ex rel.* ) | |
| THOMAS M. UBL ) | |
| ) | |
| Relator, ) | |
| ) | |
| v. ) | Civil No. 1:06-cv-641 |
| ) | |
| IIF DATA SOLUTIONS, and ) | |
| CHARLES PATTEN, SR. ) | |
| ) | |
| Defendants. ) | |

### Memorandum Opinion

This matter comes before the Court on Defendants IIF Data Solutions and Charles

Patten, Sr.'s Motion to Establish Liability for Attorneys' Fees (Dkt. no. 341). The Court

heard oral arguments on the matter on November 20, 2009. The parties have now

submitted supplemental briefs pursuant to this Court's December 4, 2009 Order

establishing Relator's liability for fees from March 24, 2009 and October 27, 2009.

## I.    Background

This motion for fees arises out of a *qui tam* action against Defendants filed under

the False Claims Act ("FCA"). Relator, Thomas M. Ubl ("Ubl"), is a former employee

of Defendant IIF Data Solutions ("IIF"). The allegations in the Complaint were

supposedly premised on Ubl's experiences as an IIF employee and his observations of

fraud on the government perpetrated by IIF and Charles Patten, IIF's founder and

President. The case proceeded down a long and tumultuous procedural path, ending with

a seven-day trial before this Court. After deliberation, the jury returned a verdict in

Defendants' favor on all counts.

After prevailing at trial, Defendants moved for fees under 31 U.S.C. § 3730(d)(4) ("§ 3730(d)(4)"),[1] which provides for an award of reasonable attorneys' fees and expenses in cases which prove to be "clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." In granting Defendants' motion for fees, the Court recognized this as a rare case in which "when the evidence in the record is viewed objectively," the Relator's claim "clearly had no reasonable chance of success." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009). As such, the Court determined that Defendants are entitled to recover a portion of their attorneys' fees and expenses.

## II. Analysis

### a. Identification of Frivolous Claims

#### i. Section 3730(d)(4)'s Standard for Awarding Attorneys' Fees

In its December 4, 2009 Order (the "December 4 Order"), the Court ruled that at least some of Relator's claims were clearly frivolous or vexatious, and hence § 3730(d)(4) authorizes an award of attorneys' fees to the prevailing Defendants. Dec. 4 Order at 2.

In its entirety, § 3730(d)(4) provides that:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

---

[1] Defendants also moved for fees pursuant 28 U.S.C. § 1927; the Court denied that Motion in its December 4, 2009 Order.

Here, Defendants clearly prevailed in this action. Our circuits have defined the "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment" standard contemplated by the FCA with subtle differences.

In *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009), the Fourth Circuit applied a standard which asks whether a Relator's claims "clearly have no reasonable chance of success" drawn from *Mikes v. Straus*, 274 F.3d 687, 704 (2d Cir. 2001). The Fourth Circuit, however, limited this understanding of § 3730(d)(4)'s standard "[f]or purposes of [that] appeal only."[2]

In interpreting § 3730(d)(4), several other Circuits have relied upon the Supreme Court's definition of frivolous found in the Title VII and 42 U.S.C § 1988 contexts. *See, e.g., U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 (10th Cir. 2004)(citing *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978)); *see also Hughes v. Rowe*, 449 U.S. 5 (1980). Under this definition, an award is justified when a relator's claims are "groundless or without foundation, rather than simply that the [relator] has ultimately lost his case." *Christiansburg*, 434 U.S. 412 (1978). Put another way, "[a] successful defendant. . . must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation." *Grynberg*, 389 F.3d at 1058 n. 22.[3]

A number of courts have recognized alternatively that "the government's [prior] awareness of the circumstances constituting the alleged transgression makes any legal claim of fraud" frivolous or vexatious for the purposes of § 3730(d)(4). *U.S. ex rel. J. Cooper & Associates, Inc. v. Bernard Hodes Group, Inc.*, 422 F.Supp.2d 225, 239

---

[2] As the Relator notes, the Fourth Circuit has defined the term "frivolous" in other contexts as "patently without substance." *See Ogundipe v. Mukasey*, 541 F.3d 257, 259 (4th Cir. 2008).

[3] Furthermore, a showing of a relator's bad faith is not a prerequisite to an award under § 3730(d)(4). *Id.* at 1058 (citing *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000)).

(D.D.C. 2006); *see also United States ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, 2009 WL 1148632, at *5 (M.D.Fla. 2009) (noting that courts have recognized claims of fraud are vexatious "where the government's undisputed prior knowledge of information alleged to constitute fraud defeated any inference of a false claim"); *U.S. ex rel. J. Cooper & Associates, Inc. v. Bernard Hodes Group, Inc.*, 422 F.Supp.2d 225, 239 (D.D.C. 2006) ("The government's decision to award contracts to the defendants, despite its knowledge that the defendants were not small or disadvantaged businesses, negates any claim of fraud against the defendants."); *United States ex rel. Minna Ree Winer Children's Trust v. Regions Bank of Louisiana*, 1996 WL 264981, at *7 (E.D.La. 1996). In other words, and as was the case here, when a company works closely with the government, and the government is well aware of particular aspects of a company's practices, a claim for fraud premised on those practices proves groundless.

The Court finds that under each of the tests identified above concerning frivolity and vexatiousness under § 3730(d)(4), Ubl's claims were sufficiently baseless to warrant an award of attorneys' fees to the prevailing Defendants.

### ii. The Frivolous and Vexatious Nature of Ubl's Claims

In evaluating the frivolity of Ubl's claims, the Court is careful to first focus on what any relator must prove to establish an FCA inducement claim, namely: (1) that the defendant made objectively false statements to the Government; (2) that those statements were made with the requisite scienter; and (3) that those statements were material. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Ubl's allegations proved consistently baseless, particularly with regard to the objective falsity and scienter elements required by any FCA claim. Puzzlingly, despite this Court's

4

December 4 Order establishing Ubl's liability for fees under § 3730(d)(4), Ubl's counsel devotes considerable space in their supplemental brief urging the Court to deny fees and costs altogether. Thus, though the Court declines to rehash the entire litigation in this Opinion, the Court will address a few of the more prevalent examples of the frivolous nature of Ubl's case for the sake of clarity.

First, with regard to Relator's claims concerning the "fraudulent" nature of IIF's labor categories, the testimony at trial, both by IIF employees and employees of the GSA and NGB, demonstrated that IIF's labor categories were reasonable. Moreover, as Defendants note, it appeared that it was NGB which "had the responsibility for determining whether a particular employee met the relevant qualifications." Def. First Brief at 9-10. Ubl proffered no basis for the notion that IIF's representations in those labor categories rose to the level of fraud, and if anything, the evidence submitted at trial proved that these definitions carried neither objective falsity nor the requisite intent necessary to substantiate an FCA claim. Relator's lawyers' deposition of Katherine Jocoy of the GSA should have alerted them to this defect well before trial.

Second, Relator's allegations regarding IIF's putative knowing submission of a fraudulent commercial price list was similarly baseless. Like Ms. Jocoy's deposition, Relator's lawyers' deposition of Ms. Van Tran of the GSA should have alerted Relator to the defects in his claim premised on the commercial price list, as the commercial price list is not typically relied upon and it is commonplace in the industry for a contracting company to list labor categories in their price lists even if they have not sold all of those categories previously.

Third, Relator claimed that IIF fraudulently represented that there were hourly rates "on" particular purchase orders in its IT Schedule application. The evidence at trial indicated that the work IIF did for Amerind implicated hourly rates even if the purchase orders failed to specifically list those rates. Even if this act were construed to be a mistake on IIF's part, elevating it further to the level of fraud is simply implausible. Rather, Ubl's claims proved to be premised on Ubl's own hypertechnical construction of whether IIF listed rates "on" purchase orders, rather than any objectively persuasive evidence.

Lastly, Relator's claims regarding the falsity of IIF's representations about TMCI's authorization of a 60-hour work week, the "negotiated" discounts with TMCI, and IIF's reporting of labor categories and rates it had sold to TMCI all proved groundless. At most, some of these allegations proved to be oversights on IIF's part, but Relater demonstrated no basis for the assertion that any of these acts rose to the level of knowingly fraudulent behavior.

Not only did his case result in an unfavorable jury verdict, Ubl's failings as a *qui tam* relator ran much deeper. The evidence submitted at trial overwhelmingly demonstrated that his groundless claims clearly had no reasonable chance of success. The evidence consistently indicated that Mr. Patten's extensive background in government service and his ongoing close relationship with the governmental entities with which IIF contracted were such that the government consistently knew exactly what it was paying for when it contracted with Defendants. Regardless of whatever technical defects might have existed in Defendants' contracting practices, there was never any basis for Ubl's allegations of *fraud* in this case. Rather, this case was "based entirely on [Ubl's] own personal opinion, supposition and speculation," which were all tellingly without support, rendering his claims clearly

frivolous or vexatious under § 3730(d)(4). *Minna Ree Winer Children's Trust*, 1996 WL 264981, at *7.

### iii. Tailoring the Award

Noting that "a defendant is entitled [under § 3730(d)(4)] to attorneys' fees for only those particular claims of a plaintiff deemed to be frivolous," *Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001), the Court's December 4 Order required Defendants to provide further briefing "isolating each frivolous claim and itemizing the amount of fees due, to the extent practicable, in defending those claims." Thus, the Court has endeavored to constrain the award of fees solely to those claims meeting the standard demanded by § 3730(d)(4), and exclusively for the time period during which it was apparent that Ubl's claims were unreasonably groundless.

After receiving further briefing on the matter, it is apparent that the material elements of scienter and objective falsity were at issue in each of the claims premised on the three GSA schedule contracts, and defense counsel's efforts were accordingly directed with equal vigor at each of these claims. Thus, as Defendants argue, the efforts of defense counsel are not easily "fragmented" in such a way that this Court can further parse frivolous claims from the non-frivolous. Rather, as became exceedingly apparent throughout the course of trial, Ubl's allegations were equally baseless as to each of these accusations.

The more salient means by which the Court limits its award of fees in this case is by limiting the time frame for which Defendants' fees may be awarded and tailoring the award so that Defendants are awarded fees solely undertaken in response to Ubl's frivolous claims. In aid of that goal, Defendants have voluntarily abstained from seeking

fees associated with: the motion to dismiss adjudicated during April and May of 2009, the subsequent settlement conference with Magistrate Judge Jones, defending against the motion to enforce the settlement agreement, the time spent pursuing their counterclaim against Ubl, and any time spent pursuing the present motion for attorneys' fees and expenses. Also, as noted, the Court's December 4 Order limited the applicable time period for an award of fees to March 24, 2009 through October 27, 2009.

Bearing in mind this narrowed scope, the Court now shifts to its analysis of the reasonableness of fees and expenses sought by Defendants under § 3730(d)(4).

### b. Reasonableness of the Fees Sought

The party seeking attorneys' fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). "In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). "In deciding what constitutes a 'reasonable' number of hours and rate, we have instructed that a district court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation;
> (7) the time limitations imposed by the client or circumstances;
> (8) the amount in controversy and the results obtained;
> (9) the experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal community in which the suit arose;

> (11) the nature and length of the professional relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases."

*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989))).[4]

Defendants seek to recover fees paid to: 1) the law firm of McKenna, Long, and Aldridge ("McKenna"); 2) Mr. Robert Cynkar; 3) Mr. Christopher Kachouroff; and 4) Mr. James Duane. In support of their motion for attorneys' fees, Defendants submit affidavits from each of these defense attorneys, in addition to a declaration made by John E. Coffey, a member of the Virginia Bar and partner at the law firm of Redmon, Peyton & Braswell in Alexandria, Virginia. Mr. Coffey has over thirty years of experience in complex commercial litigation in the Northern Virginia and metropolitan D.C. area and is the former President of the Northern Virginia Chapter of the Federal Bar Association.

*i. Analysis of Johnson Factors*

(1) The time and labor required:

As noted, this was a *qui tam* action filed under the auspices of the FCA, alleging numerous instances of fraud on the government perpetrated by Defendants. Defending this action required an understanding not only of the statutory framework of the FCA under which this case proceeded, but also of the government contracting industry in which the alleged fraud took place.

---

[4] In addition to these factors, an opposing party's ability to pay also has a bearing on a Court's fee assessment. *Chaplin v. DuPont Advance Fiber Sys.*, 303 F.Supp.2d. 766, 775-76 (E.D.Va. 2004). The Court keeps this additional factor in mind as it proceeds with its review of Defendants' fee request and endeavors to account for Relator's ability to pay in fixing the reasonable amount of fees to be awarded here.

Defending this case also required an extensive commitment of time and labor, and the time actually spent by defense counsel in defending this case was reasonable in light of this undertaking. As established in their affidavits in support of their Motion, defense counsel spoke to some sixty persons in connection with this case and worked to reduce over 900 multi-page trial exhibits, totaling over 20,000 pages, down to less than 100 exhibits for trial. Counsel also engaged in pretrial motions practice, in addition to taking *de bene esse* depositions. Counsel also engaged in the expected preparations for trial, including the preparation of arguments, witness outlines, and jury instructions.

Defendants seek $286,396.00 in fees paid to McKenna; $319,531.25 paid to Cynkar; $59,955.00 paid to Duane; and a flat fee of $75,000.00 paid to Kachouroff. Defendants, save Mr. Duane and Mr. Kachouroff,[5] do not appear to summarize the actual number of hours expended by each attorney on the case, but do offer their billing rates as follows: Cynkar states his billing rate is $625 per hour; Mr. Kachouroff states that his typical fee is $350 per hour (but agreed to a flat, non-contingent rate in this case); Mr. Duane billed $525 per hour; and McKenna billed Workmaster at $460 per hour and Ms. Susan Hill a first-year associate at McKenna at $285 per hour. Thus, in order to determine the number of hours worked by the other attorneys in this case, the Court divided the total fee charged by each attorney by the hourly rates mentioned above. This results in the following number of hours for each attorney: 511.25 hours by Mr. Cynkar, approximately 616 hours by Mr. Workmaster, and approximately 10 hours by Ms. Hill.[6]

---

[5] Mr. Coffey's declaration asserts that Mr. Duane worked 114.2 hours on this case, while Mr. Kachouroff worked "almost 1,700 hours."

[6] A chart submitted by Defendants indicates only a total amount of fees of $286,396.00 sought for all McKenna attorneys. Mr. Coffey's declaration indicates that Ms. Hill did "less than 10 hours of work" on this case. Thus, the Court subtracted ten hours worth of fees from the total amount to reach 616 hours for Mr. Workmaster.

As noted, Defendants have voluntarily reduced the number of hours for which they seek reimbursement, eliminating fees associated with, *inter alia*, litigating the motion to dismiss adjudicated during April and May of 2009 and defending against the motion to enforce the settlement agreement. The Court also endeavored to carefully review the itemized billing records submitted in support of Defendants' motion which list the specific types of work for which defense counsel billed their time. Though the majority of the time entries indicate reasonable and necessary activities, the Court finds that an excessive number of hours were dedicated to "meetings" and "conferences" with co-counsel. While conferences just before and during trial are certainly reasonable, earlier in a case they should be kept to a minimum. Thus, the Court finds that a ten percent (10%) reduction of the hours submitted by Defendants properly accounts for the unnecessary meetings which should not be taxed to Plaintiff. *See Jackson v. Estelle Place, LLC*, 2009 WL 1321506, at *4 (E.D.Va. May 8, 2009) ("Hours that are excessive, redundant, or unnecessary should not be included in a fee award.").

After factoring in this reduction, and given the nature of the case and the amount of work necessitated by some of counsel's late entry into the case, the amount of time and labor expended by counsel were reasonable. Therefore, this factor supports the reasonableness of the hours expended by Defendants' attorneys, though the Court will address in due course the billing rates charged by each attorney.

(2) The novelty and difficulty of the questions raised:

As mentioned in the analysis of Factor 1 above, this case was somewhat complex by virtue of the documentary evidence at play and the nature of the industry in which the alleged fraud transpired. The actual questions of law under the statutory framework of

11

the FCA were not anomalously complex, but understanding the nature of government contracting work requires an attorney with a degree of specialization in the field. Therefore, this factor supports the reasonableness of the hours expended by defense counsel and the corresponding billing rates established below.

(3) The skill required to perform the legal service properly:

As mentioned, several of the substantive issues presented in this case called for attorneys with a background in the field of government contracting, which Mr. Workmaster possesses. The remainder of counsel's skills were oriented toward the ability to successfully present and try a case at trial. As noted in their declarations, Messrs. Cynkar and Duane alone have approximately sixty years of trial and legal experience between them. Mr. Cynkar presents significant experience in litigating complex civil matters and Mr. Duane has significant experience in trial work and also presents a substantial expertise in the field of evidence, having researched, written, and taught on the subject extensively.

(4) The attorneys' opportunity costs in pressing the instant litigation:

This factor is perhaps most relevant in the present case to Mr. Kachouroff, who worked on this case under a fixed fee arrangement. On one hand, a fixed fee arrangement greatly reduces the opportunity cost borne by an attorney, as his income is guaranteed regardless of the disposition of the case. On the other hand, in his affidavit, Mr. Kachouroff attests to agreeing to take the case for a fixed fee of $100,000, which he now reduces to $75,000 for purposes of the time period established above, and states that he dedicated the "majority" of his time and attention to this case. He further states that he interviewed approximately 60 people in preparation of the case and reviewed over 20,000

pages of documents. Mr. Coffey's declaration also indicates that Mr. Kachouroff worked nearly 1,700 hours on this case between March 24, 2009 and October 27, 2009. The Court takes the foregoing as a significant indication of the extent to which Mr. Kachouroff's involvement in this case worked to the exclusion of other potential business at his firm. A similar logic applies to the remainder of Defendants' attorneys. Each billed at an hourly rate, and thus were guaranteed payment for the time they expended regardless of the outcome of the trial. Nonetheless, the Court notes that the extensive time spent by counsel, particularly on the eve of trial, potentially worked to the exclusion of addressing other matters.

(5) The customary fee for like work:

As noted, Defendants seek an award of fees at the following hourly rates: $625 per hour for Mr. Cynkar; $525 per hour for Mr. Duane; $460 per hour for Mr. Workmaster; and $285 per hour for Ms. Susan Hill a first-year associate at McKenna. Mr. Kachouroff was retained on a flat, non-contingent rate in this case.

In order to carry its burden on this factor, Defendants must present the Court with adequate evidence of the prevailing rates in the relevant market. *Plyler*, 902 F.2d at 277. "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* (internal quotation marks omitted). As the Fourth Circuit reaffirmed in *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir. 1994), "[t]he relevant market for determining the prevailing rate is ordinarily the

community in which the court where the action is prosecuted sits." *Id.* at 175 (citing *National Wildlife Federation v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).[7]

In this case, Defendants rely on several sources of support for the rates asserted: 1) the affidavits of their own attorneys; 2) the declaration of Mr. Coffey; and 3) the "Adjusted Laffey Matrix."[8]

As noted, merely relying upon an attorney's own affidavit is insufficient to establish an acceptable market rate for attorneys' fees under this factor. However, the Court does look to the rates an attorney has charged in the past and information in the affidavits regarding their relevant experience as helpful information at the outset of this inquiry.

As to Mr. Coffey's declaration, among the accepted types of evidence which are satisfactory to establish the prevailing market rates are "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245. As noted, Mr. Coffey has extensive experience in litigating complex civil matters in this area. He attests to having the opportunity throughout his career to observe the rates charged by "DC area" law firms in complex civil litigation. He further bases his opinion on his experience in the same area of practice and on his discussions with attorneys at other complex civil litigation firms in the area. He also attests to becoming familiar with the work and skill of each of the defense attorneys by reviewing their work in this case. In

---

[7] Though the Fourth Circuit also noted that rates from other markets may be considered when a case is of such complexity or difficulty that no adequate local counsel is available, indicating that the party's choice of an out-of-market attorney was reasonable. *Id.*

[8] The "Laffey Matrix," is statement of market attorneys' fee rates for the Washington-Baltimore area published and periodically updated by the United States Attorney's Office for the District of Columbia. *See Robinson*, 560 F.3d at 244. The Laffey Matrix "is not binding upon the United States District Court for the Eastern District of Virginia," *Robinson*, 560 F.3d at 244 (citations omitted), but can provide a useful cross reference for the Court.

Mr. Coffey's opinion, the rates asserted by defense counsel "fall well within the prevailing market rates in the Washington metropolitan area."

However, Mr. Coffey's broad reference to the prevailing rates in the "Washington metropolitan area" raises concerns about the accuracy of his declaration as it applies to this market. As noted, the relevant market for determining the appropriate prevailing rate for fees is the "community in which the court where the action is prosecuted sits," *Rum Creek*, 31 F. 3d at 175, indicating that greater emphasis should be placed on the prevailing rates specifically in Northern Virginia rather than then entire "Washington metropolitan area." In doing so, "courts in this district have repeatedly recognized that hourly rates charged in Washington, D.C. are usually higher than hourly rates charged in the Eastern District of Virginia." *Jackson*, 2009 WL 1321506 at *3 (citing *Am. Canoe Ass'n v. EPA*, 138 F.Supp.2d 722, 740-42 (E.D.Va.2001)). Thus, an award at the full hourly rate recommended by Mr. Coffey is unsupported given the Court's obligation to focus on the proper relevant market.

Finally, regarding the Laffey Matrix, and as Mr. Coffey notes, there are actually two Laffey Matrixes in existence, one published by the United States Attorney's Office for the District of Columbia and one known as the "Adjusted Laffey Matrix."[9] Mr. Coffey argues that the latter is the more accurate representation of prevailing market rates in the Northern Virginia/Washington, D.C. area.[10] The two Matrixes are provided below:

---

[9] The Court will refer to the former as the "Unadjusted" Laffey Matrix and the latter as the "Adjusted" Laffey Matrix.

[10] Though Mr. Coffey is correct that a recent Fourth Circuit case references this "Adjusted Laffey Matrix," *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 n.11 (4th Cir. 2009), the Fourth Circuit was likewise careful to note that "the Laffey matrix is a useful starting point to determine fees, not a required referent." *Id.* at 229.

### "Unadjusted" Laffey Matrix

| Experience | Years | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 |
|---|---|---|---|---|---|---|---|
| 20+ years | | 380 | 390 | 405 | 425 | 440 | 465 |
| 11-19 years | | 335 | 345 | 360 | 375 | 390 | 410 |
| 8-10 years | | 270 | 280 | 290 | 305 | 315 | 330 |
| 4-7 years | | 220 | 225 | 235 | 245 | 255 | 270 |
| 1-3 years | | 180 | 185 | 195 | 205 | 215 | 225 |
| Paralegals & Law Clerks | | 105 | 110 | 115 | 120 | 125 | 130 |

### "Adjusted" Laffey Matrix

| | | EXPERIENCE | | | | |
|---|---|---|---|---|---|---|
| Year | Paralegal/ Law Clerk | 1 to 3 Years | 4 to 7 Years | 8-10 Years | 11-19 Years | 20 + Years |
| 6/01/09- 5/31/10 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | $130 | $239 | $293 | $423 | $476 | $574 |

The Fourth Circuit, in *Grissom*, looked to the Unadjusted Laffey Matrix in evaluating fees in the Northern Virginia area and recognized that although the Matrix has been considered a "useful starting point" by some courts in evaluating fee requests, it is ultimately "insufficient to carry [the moving party's] burden of proof" on its own. 549 F.3d at 323.[11] Rather, the *Grissom* court adjusted the applicable market rates as indicated in the table provided below:

---

[11] Furthermore, reliance on the Laffey Matrix is also constrained by the fact that, as recognized above, hourly rates charged in Washington, D.C. are usually higher than those rates charged in this District. *Jackson*, 2009 WL 1321506 at *3.

| Title | Years of Experience | Hourly Rate |
|-------|---------------------|-------------|
| Partner | 18-19+ | $335.00-$380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*Grissom,* 549 F.3d at 323 (hereafter the "Grissom Table").

As this Court recently noted, *Grissom* provides a useful benchmark for the present case, as it is a recent Fourth Circuit decision (2008) involving complex civil litigation and reputable attorneys practicing in the Northern Virginia market. Accordingly, the Court makes the following findings with respect to each attorney bearing in mind each of these resources, but giving the greatest heed to the Fourth Circuit's guidance in *Grissom.*

      i.    <u>Mr. Cynkar</u>

As noted, Defendants seek fees in the amount of $625 per hour for Mr. Cynkar's services. Mr. Cynkar has over thirty years of experience in commercial litigation. According to the Unadjusted Laffey Matrix, the hourly rate for a partner with over twenty years of experience is $465 for the applicable period of time in this case, while the Adjusted Matrix puts that figure at $686. Presumably, the Grissom Table would put Mr. Cynkar's hourly rate at $380 or more. Clearly, an hourly rate of $625 per hour exceeds both the Unadjusted Laffey Matrix and the Grissom Table. Though the Court gives great deference to the considered opinion of Mr. Coffey, a figure of $625 per hour presents too significant a departure from the guidance presently available to the Court. As such, and in consideration of the record presently in front of the Court, an hourly rate of $400 is appropriate for Mr. Cynkar's time.

### ii.   Mr. Duane

Next, Defendants seek fees in the amount of $525 per hour for Mr. Duane's services. Though the exhibits submitted by Defendants do not indicate the number of years of experience Mr. Duane has spent in practice, the Court notes that Mr. Duane's CV indicates that he entered private practice in 1987 and moved to academia from 1991 through the present. Accordingly, the Court is confident that Mr. Duane falls in a similar category of over twenty years of experience, indicating $465 under the Unadjusted Laffey Matrix, $686 under the Adjusted Matrix, and $380 on the Grissom Table. Given the foregoing analysis, the Court finds that a rate of $400 per hour is also appropriate for the fees incurred for Mr. Duane's work in the case.

### iii.   Mr. Workmaster and Ms. Hill

Defendants seek fees in the amount of $460 per hour for Mr. Workmaster and $285 per hour for Ms. Susan Hill. Mr. Workmaster has almost ten years of experience, "including significant commercial litigation experience," while Ms. Hill is a first-year associate. The Grissom Table leaves a gap regarding attorneys at the experience level presented by Mr. Workmaster. *See Grissom*, 549 F.3d at 323 (gap between Associate with six to seven years of experience and Partner with eighteen to nineteen years of experience). However, after analyzing the rate at which the hourly rates in the Grissom Table increase in relation to years of experience, the Court finds that a billing rate of $360 is reasonable for Mr. Workmaster. The two Laffey Matrixes and the Grissom Table puts the applicable rate for an attorney with Ms. Hill's experience between $180 and $285 per hour. In light of the foregoing, the Court deems $200 to be a reasonable hourly fee for Ms. Hill's services.

iv.   Mr. Kachouroff

Though Mr. Kachouroff was compensated in this case on a flat-fee basis ($75,000 for the applicable period of time), the Court briefly addresses the reasonableness of his fee in this case.  Mr. Kachouroff attests that he regularly bills clients at a rate of $ 350-400 per hour.  According to Mr. Coffey's declaration, Mr. Kachouroff worked over 1,700 hours on this case between March 24, 2009 and October 27, 2009, which equates to an hourly rate of only approximately $44 per hour.  Given the foregoing discussion, the Court deems Mr. Kachouroff's fee to be reasonable.

To summarize, the Court provides the following table indicating the reasonable hourly rate it awards for each defense attorney in this case:

**TABLE 1**

| Title | Years of Experience | Hourly Rate |
|-------|--------------------|-------------|
| Mr. Cynkar | 30+ | $ 400 |
| Mr. Duane | 20+ | $ 400 |
| Mr. Workmaster | 10 | $ 360 |
| Ms. Hill | 1 | $ 200 |
| Mr. Kachouroff | 10 | N/A |

(6) The attorneys' expectations at the outset of the litigation:

This factor provides no additional support for an award of attorneys' fees, since the fee arrangement was fixed for each attorney, either on an hourly or flat-rate business.

(7) The time limitations imposed by the client or circumstances:

The record contains no evidence that Defendants' attorneys were under abnormal time limitations beyond those typically imposed in this Division.  Though the Court would note that a majority of Defendants' "trial" team began working in earnest around

the time the $8.9 settlement fell through, there was nothing exceptional about client demands or the circumstances of this case which bear significant relevance under this factor. Thus, this factor provides no additional guidance regarding an award of attorneys' fees.

(8) The amount in controversy and the results obtained:

"[T]he degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-437 (1983)). This case presented significant risks for Defendants. The Amended Complaint sought damages of $140 million, potentially trebled under the FCA. Further, IIF ran the risk of debarment, which would have rendered it incapable of bidding on and receiving further government contracts, a death knell for a company in the government contracting industry. Thus, as Defendants argue, this case amounted to a "bet the company" litigation.

Given the high stakes of the case from the outset of trial, the results obtained by defense counsel were a significant success. As noted, the jury rendered a verdict in favor of Defendants on all counts, exposing Defendants to no liability whatsoever for the allegations put forth in the Amended Complaint. Given this case's procedural posture, which included a near $8.9 million settlement, the result obtained by defense counsel certainly proved their value to their client. As such, this factor strongly weighs in favor of the award of fees, as reduced under factors 1 and 5 above. *See* § II.b.i.(5), *supra*.

(9) The experience, reputation and ability of the attorney:

As mentioned above in the Factor 5 analysis, Defendants' attorneys, with the exception of Ms. Hill, are all experienced in the field of government contracting or trial work. Messrs. Cynkar and Duane alone have approximately sixty years of trial and legal experience between them. Mr. Kachouroff and Mr. Workmaster have approximately eight and ten years of relevant experience, respectively. This experience supports a finding that the rates charged by these attorneys, as adjusted, were reasonable.

(10) The undesirability of the case within the legal community in which the suit arose:

This factor provides no additional support for an award of attorneys' fees, as Defendants do not contend that this case was undesirable.

(11) The nature and length of the professional relationship between attorney and client:

This factor applies most pertinently to Mr. Kachouroff, as he is the only attorney with a prior relationship with Defendants. Mr. Kachouroff has a long-standing relationship with IIF and Mr. Patten personally. Mr. Kachouroff asserts that this relationship compelled him to take the case on a flat fee basis, which, as discussed above, amounted to a low fee when broken down by the number of hours actually worked. As Mr. Coffey notes, the remainder of Defendants' attorneys had no prior relationship with IIF or Mr. Patten, and their retention and fees were negotiated in an arm's length manner.

(12) Attorneys' fees awards in similar cases:

Neither party submits case law from similar cases for the Court's consideration under this factor. Nonetheless, the Court endeavored to locate similar cases which analyzed an award of attorneys' fees in similar circumstances. In one such case, *U.S. ex rel. Vuyyuru v. Jadhav*, 2007 WL 2471087 (E.D.Va. August 237, 2007), *aff'd* 555 F.3d 337 (4th Cir. 2009), this District, albeit in the Richmond Division, awarded attorneys'

fees in a False Claims Act case under § 3730(d)(4). In that case, the Court found, and the Fourth Circuit later confirmed, that rates of $310 and $400 per hour were reasonable. The Court finds this to be strong confirmation of the reasonableness of the fees awarded in the instant case. *See also Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.* 2009 WL 3423848, at *5 (E.D.Va. October 16, 2009)(finding rate of $300 per hour reasonable for attorneys with fourteen to twenty-eight years of experience); *Alford v. Martin & Gass, Inc.*, 2009 WL 2447936, at *4 (E.D. Va. August 3, 2009 (awarding fees at range of $60-$350 per hour); *Jackson*, 2009 WL 1321506, at *3 (awarding rates of $350 per hour for partners with between eleven and nineteen years experience; $170 for an associate with one to three years of experience; and $60 for a legal assistant); *Burns v. Anderson*, 2006 WL 2456372, at *9 (E.D.Va. August 22, 2006)(prevailing party sought rates ranging from $664 to $695 per hour for partners in major firm which the court reduced to $265 to $278 per hour).

Therefore, this factor also supports the reasonableness of the attorneys' fees charged by Defendants' attorneys, as reduced above.

Balancing:

Reviewing the Court's analysis above of the *Johnson* factors, numbers 1-5, 8, 9, 11, and 12 support the reasonableness of the fee award here. Factors 6, 7, and 10 provide no additional support in Defendants' favor. However, as discussed, factor 5 supports a reduction of the hourly rate awarded to each attorney, as the rates proffered exceed the customary fees in this jurisdiction. In sum, consideration of the *Johnson* factors supports the reasonableness of the fee award here, as adjusted.

*ii. Lodestar figure*

"Guided by [the *Johnson*] factors, the court should determine how many hours were reasonably spent on the litigation and the rate at which that work should be compensated." *Toolchex, Inc. v. Trainor*, 2009 WL 224486 at *6 (E.D. Va. July 24, 2009) (citing *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640 (4th Cir.1998)). "On that basis, the court can determine a 'lodestar figure,' which may be adjusted further." *Id.* Table 1 provides a summary of the hours billed, which the Court has already found reasonable, at the reasonable rates established above, as follows:

### TABLE 2

| Date | Hours Worked[12] | Rate | Total |
|------|------|------|-------|
| 03/24/2009 – 10/27/2009 | Robert Cynkar = 460.125 | $400/hr | $184,050 |
| | James Duane = 102.78 | $400/hr | $41,112 |
| | Christopher Kachouroff = ~1,700 | - | $75,000 |
| | Jason Workmaster = 554.40 | $360/hr | $199,584 |
| | Susan Hill = 9.00 | $200/hr | $1,800 |
| | **Total Hours = 1,251 @ hourly rate/ 2,951 total** | | **Total Fees = $501,546** |

*iii. Lodestar Reduction*

In many cases, the Court is to consider a reduction of the fees awarded based upon the degree of success obtained in the litigation and should reduce an award to account for any unsuccessful claims. *See Lilienthal*, 322 F. Supp. 2d at 675 (quoting *Hensley,* 461 U.S. at 436-37.) ("[b]ecause the degree of success obtained by the plaintiff

---

[12] The figures in the "Hours Worked" column reflect the ten percent (10%) reduction in recoverable hours discussed above. *See supra* at § II(b)(i)(1).

is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'"). However, given the Court's discussion above in *Johnson* factor 8, the Court finds no basis for a further reduction of the award. Defense counsel attained a complete victory for their client, warranting no reduction of the fees beyond those already noted.

### c. Expenses

Defendants also seek reimbursement $5,201.97 in expenses. These expenses all relate to defense counsel's stay at the Westin Hotel in Alexandria, in close proximity to the courthouse, from October 16, 2009 through October 28, 2009.[13] Defense counsel argues that although Messrs. Workmaster and Cynkar have offices in Washington, D.C., the use of a central location in Alexandria for trial preparation was necessary and actually saved expenses throughout trial. Counsel do not seek expenses for food or telephone usage at the hotel, and thus only seek reimbursement for a portion of the Westin bill submitted as Defendants' Exhibit I, which results in a $1,872.65 deduction from the bill's total of $7,074.62, equaling the $5,201.97 sought by Defendants.

After careful consideration, the Court does not find these expenses to be reasonable. Given that several defense attorneys have offices in reasonably close proximity to the courthouse, the use of the Westin was not reasonably necessary and counsel had less expensive alternatives at their disposal. Thus, the Court declines to award the $5,201.97 in expenses sought by Defendants.

---

[13] Defendants' Exhibit I is an itemized bill from the Alexandria Westin, reflecting charges from October 16, 2009 through October 28, 2009, categorized as charges for "Room & Tax," "Food and Bev.," "Telephone," "Misc." (which Defendants identify as parking charges), and "Other" (which Defendants identify as occupancy and tourism taxes).

## III.    Conclusion

For the foregoing reasons, the Court hereby awards Defendants $501,546.00 in attorneys' fees and denies the expenses sought by Defendants.

An appropriate order shall issue.


Alexandria, Virginia
April 28, 2010

/s/
Liam O'Grady
United States District Judge